IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JOHN HOWARD MORRIS, III,

    Petitioner,                          No. 2:07-cv-1771 MCE JFM P

    vs.

ROSEANNE CAMPBELL, Warden,      FINDINGS AND RECOMMENDATIONS

    Respondent.

        Petitioner is a state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. On May 7, 2008, petitioner filed an amended petition pursuant to court order.[1]

        In the instant action, petitioner challenges the 2005 decision of the California Board of Prison Terms ("Board"), claiming the Board violated his right to due process when parole was denied based partially on "multiple victims." Petitioner contends there were not "multiple victims" as one count of attempted murder was dismissed in 1987 and he was found not guilty of attempted murder of the other victim in a 1984 retrial. In addition, petitioner claims the presence of Barbara Jones (nee Statler) at the 2005 parole hearing also violated petitioner's due process rights.

---

[1] Petitioner's double jeopardy claim was dismissed as unexhausted. See April 22, 2008 Order.

1

## PROCEDURAL BACKGROUND

Petitioner filed a petition for writ of habeas corpus in the California Court of Appeal, First Appellate District, which was denied without comment on April 20, 2006. (Pet. at 18.)

Petitioner filed a habeas petition in the California Supreme Court on May 10, 2006, Case No. S143302. (Pet. at 13-17.) The California Supreme Court denied the petition *en banc* on December 13, 2006 in an order citing In re Swain, 34 Cal.2d 300, 304 (1949) and People v. Duvall, 9 Cal.4th 464, 474 (1995).

The original petition was filed in the Northern District of California on January 17, 2007, and transferred here on August 29, 2007. Petitioner's amended petition was filed on May 7, 2008.

## FACTS

The facts of the underlying committed offenses were read into the record at the 2005 Board hearing:

> In the early morning evening of 4/11/1981 Victim Wendy McDonal (sic), that's M-C-D-O-N-A-L, and Barbara was hitchhiking home to Glen Ellen from the downtown area of Sonoma, California. [Petitioner] and two male teenage brothers picked up the victim in [petitioner's] truck. Wendy reported asking [petitioner] if he had any marijuana. [Petitioner] said that he did have some marijuana at his home, and they proceeded to his residence in Sonoma, Boils [sic] Hot Springs, where the five reportedly smoked marijuana and consumed alcohol. At approximately 21:00 hours [petitioner] drove the two boys to an area near their home, and started in the direction of the victim's home, but instead drove to his own residence stating that there was something wrong with his truck. When both Wendy and Barbara remained in the truck, [petitioner] went into his residence for a brief period. Then he exited and called for Wendy, who he claimed was wanted on the telephone. Barbara remained in the truck until she heard screaming, don't, stop. Barbara approached the house. And as she opened the door, she reportedly heard a gunshot and observed [petitioner] hovering over Wendy with a gun in his right hand. Barbara retreated to a spot on the porch.
> . . . .
> Barbara retreated to a spot on the porch, and Wendy ran from the house followed by [petitioner]. [Petitioner] fired another shot at

1   Wendy, then turned into the direction of Barbara and fired a shot, which entered and exited in the area of the right elbow.
2   [Petitioner] then reportedly grabbed Barbara, pulled her into the residence, aimed the gun approximate three inches from her head
3   and began pulling the trigger. The gun failed to fire, and Barbara was then drug out . . . the rear door and was able to flee from
4   [petitioner]. Police were summoned by witnesses who stated they heard four or five gunshots. Officers discovered Wendy's body
5   lying some distance from [petitioner's] residence. It was later established that Wendy ha died from a single gunshot wound to her
6   heart. A search of the neighborhood resulted in the discovery of [petitioner] lying under a pile of plywood with a .22 caliber
7   handgun, contained five extended cartridges in his possession. There's no (indiscernible) noted a relationship between the victim
8   and [petitioner].

9   (Answer, Ex. 1, at 11-14 [facts taken from probation report].)

ANALYSIS

I. Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

3

from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II. Due Process

Petitioner contends his due process rights were violated by the 2005 denial of parole. Specifically, petitioner argues it was a violation of his due process rights for the Board to consider there were multiple victims of petitioner's criminal offenses, that he is no longer convicted of attempted murder because that conviction was reversed on appeal, and that it was a violation of his right to due process for Barbara Jones (nee Statler) to appear at the Board hearing.

The last reasoned rejection of this claim is the decision of the Los Angeles County Superior Court on petitioner's petition for writ of habeas corpus. The state court rejected this claim as follows:

> In determining whether the BPT abused its discretion, the Court must examine the record to determine if the BPT's decision is supported by "some evidence." The Board may properly deny parole based on the gravity of the commitment offense alone, as long as the violence or viciousness of the crime exceeds the minimum elements of the offense. In re Dannenberg (2005) 34 Cal.4th 1061. Here, the gravity of the commitment offense alone constitutes sufficient grounds for denial of parole. Petitioner, after furnishing marijuana to the 15-year-old victim, lured the victim into his residence and then shot and killed the victim because he suspected she had stolen some marijuana. This alone sufficiently indicates that the murder was committed in an especially heinous, atrocious and cruel manner. Additionally, petitioner had an

4

1
2
3
  escalating history of violence, which included a CYA commitment for assault with a deadly weapon in which petitioner shot another person in the abdomen three times.  Petitioner also received an unfavorable psychological report, which indicated that petitioner's potential for violence remains high.

4
5
  The Parole Board's decision denying parole was supported by "some evidence."  The petition is DENIED.

6 (In the Matter of the Application of John Howard Morris III, No. SCR-10695 (Sonoma County

7 Superior Court), appended to Answer, Ex. 3.)

8     Section 3041 of the California Penal Code provides prisoners sentenced in

9 California to a state prison term that provides for the possibility of parole with "a constitutionally

10 protected liberty interest in the receipt of a parole release date, a liberty interest that is protected

11 by the procedural safeguards of the Due Process Clause.  Irons v. Carey, 479 F.3d 658, 662 (9th

12 Cir. 2007); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003); McQuillion v. Duncan, 306

13 F.3d 895, 903 (9th Cir.2002); and Bd. of Pardons v. Allen, 482 U.S. 369, 377-78, 107 S.Ct. 2415

14 (1987) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 12, 99 S.Ct.

15 2100 (1979)).)  California law requires that the Board "determine whether a prisoner is presently

16 too dangerous to be deemed suitable for parole based on the 'circumstances tending to show

17 unsuitability' and the 'circumstances tending to show suitability' set forth in Cal.Code. Regs., tit.

18 15 § 2402(c)-(d)."  Irons, at 662-63.  The Irons court described the regulations as follows:

19
20
21
22
23
24
25
26
  [T]he circumstances tending to show that a prisoner is unsuitable include: (1) the commitment offense, where the offense was committed in "an especially heinous, atrocious or cruel manner"; (2) the prisoner's previous record of violence; (3)"a history of unstable or tumultuous relationships with others"; (4) commission of "sadistic sexual offenses"; (5) "a lengthy history of severe mental problems related to the offense"; and (6) "serious misconduct in prison or jail." Cal.Code. Regs., tit. 15 § 2402(c). Circumstances tending to show that a prisoner is suitable for parole include: (1) the prisoner has no juvenile record; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has shown remorse; . . . (6) the prisoner lacks any significant history of violent crime; . . . (8) the prisoner "has made realistic plans for release or has developed marketable skills that can be put to use upon release"; (9) "[i]nstitutional activities

5

     indicate an enhanced ability to function within the law upon
     release." Cal.Code. Regs., tit. 15 § 2402(d).

Id. at 663 n.4.  It has been clearly established by the United States Supreme Court "that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record,' Sass, 461 F.3d at 1128-29 (citing Superintendent v. Hill, 472 U.S. 445, 457, 105 S.Ct. 2768 (1985)); see also Biggs, 334 F.3d at 915 (citing McQuillion, 306 F.3d at 904), or is "otherwise arbitrary," Hill, 472 U.S. at 457, 105 S.Ct. 2768." Id. at 662.

  The court has reviewed the documents provided and determined that the state court's rejection of this claim was neither contrary to, nor an unreasonable application of clearly established federal law, nor was it an unreasonable application of the facts.  The Board concluded petitioner posed an unreasonable risk of danger to society or a threat to public safety if released based on the following:

  (1) The commitment offense of second degree murder.

  (2) On a previous occasion, petitioner inflicted injury on another person.

  (3) Petitioner had a record of violent behavior.

  (4) Petitioner had an escalating pattern of criminal conduct.

  (5) Petitioner had a history of unstable or tumultuous relationships with others.

  (6) Petitioner failed previous grants of probation.

  (7) Petitioner failed to profit from society's previous attempts to correct his criminality.

  (8) Petitioner's tumultuous relationship in the Army.

  (9) The recent psychological evaluation reflects a longer period of observation and evaluation is required before petitioner could be found suitable for parole.

/////

/////

1            (10) Petitioner had not completed the necessary programming essential to
2  adjustment.
3  (2005 Board Hearing Transcript, at 86-95 [appended to Answer, Ex. 1].)
4            Petitioner argues that the Board denied his parole "based mostly on his 'multiple
5  victims.'" (Traverse at 4.) However, the transcript from the Board hearing reflects there were at
6  least ten reasons expressly stated for the denial of parole, none of which included "multiple
7  victims."[2] Petitioner's parole was not denied solely on the grounds of multiple victims. In
8  addition, the Board noted that the psychological evaluation reflected petitioner's "initial
9  compliance with prison regulation was initially poor with ten disciplinaries, 115s, for drug use
10 and fighting. His last 115 was in February 2002." (2005 Board Hearing Transcript at 89.)

> [B]ecause the paramount consideration for both the Board and the
> Governor under the governing statutes is whether the inmate
> currently poses a threat to public safety, and because the inmate's
> due process interest in parole mandates a meaningful review of a
> denial-of-parole decision, the proper articulation of the standard of
> review is whether there exists "some evidence" that an inmate
> poses a current threat to public safety, rather than merely some
> evidence of the existence of a statutory unsuitability factor.

16 In re Richard Shaputis, ____ Cal.Rptr. 3d ____, 2008 WL 3863608 at *7 (Cal.), citing In re
17 Lawrence, ____ Cal.4th ____, 2008 WL 3863606 at 2 (Cal.).
18           Here, all of the reasons expressed by the Board at the 2005 parole hearing provide
19 "some evidence" for the Board to find petitioner presents a current threat to public safety
20 justifying the denial of parole.
21           Petitioner appears to believe that because his conviction of attempted murder of
22 Barbara was reversed, she cannot be viewed as a victim. However, petitioner's conviction of two
23 separate counts of furnishing marijuana to a minor is sufficient to identify Barbara as a victim

---

[2] While it does appear that the Commissioner on occasion misspoke concerning the details of the commitment offenses, on page 86, the Commissioner clarified that there were multiple victims attacked and one was killed. (Id.)

inasmuch as he supplied Wendy and Barbara with marijuana. California Penal Code § 3043 provides for the attendance of victims at parole eligibility hearings. Thus, Barbara's attendance at the hearing did not violate petitioner's due process rights.

In accordance with the above, IT IS HEREBY RECOMMENDED that the application for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 19, 2008.

UNITED STATES MAGISTRATE JUDGE

001;morr1771.157